2007 BNH 032

_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                    Bk. No. 06-10877-MWV
                                                          Chapter 7
Andrew C. Turner, III,
and Rebecca L. Turner,
                        Debtors


*Stanley H. Robinson, Esq.*
*Attorney for the Debtors*

*Geraldine Karonis, Esq.*
*OFFICE OF THE UNITED STATES TRUSTEE*
*Assistant United States Trustee*



## MEMORANDUM OPINION

    The United States Trustee ("UST") filed a motion to dismiss the bankruptcy case of Andrew C.

Turner, III, and Rebecca L. Turner (the "Debtors") pursuant to section 707(b)(2).[1]  This case is about

whether the Debtors are allowed to take certain deductions on Form B22A, the Statement of Current

Monthly Income and Means Test Calculation.


## JURISDICTION

    This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334

and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy

Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core

proceeding in accordance with 28 U.S.C. § 157(b).

_____

    [1] All statutory section references herein are to the Bankruptcy Code, as amended, 11 U.S.C.
§§ 101 to 1532.

<u>**BACKGROUND**</u>

The Debtors filed a Chapter 7 bankruptcy petition on July 27, 2006.  It is undisputed that the Debtors are above median, which results in their allowed expenses being determined with reference to Form B22A, the "Statement of Current Monthly Income and Means Test Calculation" ("Form B22A"). After deducting their expenses from their current monthly income, the Debtors checked the box at Line 52 indicating that the presumption arises that granting relief to the Debtors would be an abuse of Chapter 7.  However, the Debtors' position is that they are entitled to additional deductions that would, if allowed, result in the presumption of abuse not arising or being rebutted.  As required by section 704(b)(1)(A), the UST filed a motion to dismiss because the presumption appears to have arisen.

The following facts relate to the various expenses in dispute.  The Debtors are a married couple and have three sons living at home.  Mrs. Turner works in a supermarket where she has made voluntary contributions to a 401k plan.  She took out an $8,000 loan from her 401k plan in October 2005, and then took out a second loan in March 2007 for $10,000.  The second loan was used to repay the first loan and to fix the roof of their house.  As long as Mrs. Turner works at the supermarket, she is required to repay the 401k loan through automatic payroll deductions, which deductions are currently $177.98 per month. A default would not cause her employment to be terminated, but it would have tax consequences.  Mrs. Turner is also required to purchase certain shoes, shirts, and sweatshirts for her employment.  These expenses are not automatically taken from her paycheck, and she claims to incur a monthly expense of approximately twenty dollars.

The Debtors own four vehicles, two of them being for two of their teenage sons.  The parents' vehicles are encumbered while the Debtors own the sons' vehicles free and clear of liens.  Mr. Turner is an area supervisor for a company that manages fast food restaurants.  The nature of his job requires him to put substantial mileage on his vehicle, and his employer has incorporated a monthly reimbursement of $525 into Mr. Turner's salary.  Mr. Turner claimed a deduction on his 2005 federal tax return in the

amount of $9,175, which is $764.58 per month.  This represents 21,266 miles driven for his employment, excluding commuting miles.

Approximately five years ago, the Debtors had a problem with carpenter ants in their home.  In order to avoid a repeat of this costly problem, the Debtors signed up for quarterly pest control applications that result in a monthly expense of approximately eighty three dollars.

<u>**DISCUSSION**</u>

The UST argues that several deductions taken by the Debtors are not allowed.  The UST objects to the Debtors' vehicle deductions, 401k loan repayment deduction, and three "additional expense claims" deducted on Line 56.

I.      401k Loan Repayment

The Court has previously held that Chapter 13 debtors may deduct 401k loan repayments regardless of whether they are above or below median.  In re Njuguna, 357 B.R. 689, 690–91 (Bankr. D.N.H. 2006).  The issue presented here is whether Chapter 7 debtors are also permitted to deduct 401k loan repayments under the means test.

A.      401k Loan Repayment as a Mandatory Payroll Deduction

The Debtors first argue that Mrs. Turner's loan repayments are deductible on Line 26 as "mandatory payroll deductions."  Section 707(b)(2)(A)(ii)(I) provides that a debtor may deduct her "actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service."  These specified categories are found in the Internal Revenue Manual (the "Manual") under the heading "Other Expenses," and an expense that falls within one of the sixteen enumerated categories is deductible if it passes the "necessary expense test," i.e., if the expense is for the health and welfare of the debtor and/or the debtor's family or is for the production of income.  I.R.M. § 5.15.1.10 (2004).

- 3 -

One of the sixteen enumerated categories in the Manual is "Involuntary Deductions," and the category's instructions indicate that an involuntary deduction passes the necessary expense test "[i]f it is a requirement of the job; i.e. union dues, uniforms, work shoes." Id. The involuntary deductions category has been incorporated into Form B22A at Line 26 under the title "mandatory payroll deductions." Line 26 states:

> **Other Necessary Expenses: mandatory payroll deductions.** Enter the total average monthly payroll deductions that are required for your employment, such as mandatory retirement contributions, union dues, and uniform costs. **Do not include discretionary amounts, such as non-mandatory 401(k) contributions.**

Form B22A (emphasis in original).

Mrs. Turner's employer, Albertsons, permits her to make voluntary contributions to Albertsons 401k plan, Albertsons Savings & Retirement Estates ("ASRE"); Albertson's does not require Mrs. Turner to make contributions. Mrs. Turner made contributions to her 401k plan and then took out two loans. The ASRE guidelines provide that, while she is an employee of Albertsons, she is required to repay the loans through automatic payroll deductions. (Pl.'s ex. 4 at 8.) If Mrs. Turner stopped working at Albertsons, she would repay the loans via personal checks. Id. Mrs. Turner stated at the evidentiary hearing that her failure to repay the loan would not cause her to lose her job. Rather, as provided for in the ASRE guidelines, "[t]he defaulted portion of the loan will be treated as a taxable distribution." Id.

Similar facts were involved in In re Lenton, 358 B.R. 651 (Bankr. E.D. Pa. 2006) and In re Whitaker, 2007 WL 2156397 (Bankr. N.D. Ohio July 25, 2007). In Lenton and Whitaker, the debtors voluntarily contributed to 401k plans and then took out 401k loans. The debtors' employers required the debtors to repay the loans through automatic payroll deductions. If the debtors defaulted, the balance of the loans would be treated as taxable distributions, but the debtors would not lose their jobs. The Lenton and Whitaker courts denied the debtors' attempts to deduct their 401k loan repayments as "mandatory payroll deductions."

The Court agrees with Lenton's statement that

- 4 -

> the form does not speak of mandatory payroll deductions for loan repayments but
> mandatory payroll deductions required for employment such as retirement contributions.
> The term "mandatory retirement contributions" implies a situation where participation in
> a retirement plan is a condition of the job, *i.e.*, the original contributions are a deduction
> that an employer would take from *all* employees.  This is consistent with the Manual,
> which requires that an involuntary deduction "must be a requirement of the job."

In re Lenton, 358 B.R. at 657 (quoting I.R.M. § 5.15.1.10).  Mrs. Turner's initial contributions were

voluntary, and voluntary contributions, of course, are not deductible as "mandatory payroll deductions."

"The fact that Debtor took a loan against those [voluntary contributions] under loan terms that mandate

repayment by payroll deduction does not change the nature of the funds when Debtor repays them."  Id. at

658; see also In re Whitaker, 2007 WL 2156397, at *3 (quoting same).  The Court concludes that Mrs.

Turner's 401k loan payments are not mandatory and, therefore, not deductible as "mandatory payroll

deductions."

> B.      401k Loan Repayment as an Unenumerated "Other Necessary Expense"

Alternatively, the Debtors assert that the sixteen categories enumerated by the IRS are only

examples, and that additional expenses such as the 401k loan repayments are deductible so long as they

pass the necessary expense test.  However, the Court need not determine whether the Manual's list of

categories is exclusive because, for purposes of the means test, section 707(b)(2)(A)(ii)(I) limits

deductions to the "*categories specified* as Other Necessary Expenses issued by the Internal Revenue

Service."  11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added).  If an expense does not fit into one of the

enumerated categories, the expense may not otherwise be deducted in the means test as an "other

necessary expense."  See In re Whitaker, 2007 WL 2156397, at *4 (noting that "§ 707(b)(2)(A)(ii)

expressly limits deductions for other necessary expenses to those that fall within" these categories); In re

Lara, 347 B.R. 198, 204 (Bankr. N.D. Tex. 2006).  Because the Debtors have not proven that their 401k

loan repayments fit into any of the sixteen specified categories, the repayments are not deductible as an

"other necessary expense."

C.      401k Loan Repayment as an Secured Claim

The Debtors' next argument is that the 401k loan repayments are deductible at Line 42 pursuant to section 707(b)(2)(A)(iii) as payments on secured claims.  However, the prevailing pre-BAPCPA case law—beginning with In re Villarie—held that a debtor who takes out a 401k loan is really only taking an advance from herself, and the retirement account entity (in this case ASRE) does not have a right to payment from the debtor, and therefore, there is no "debt," "claim," or "right to payment."  See, e.g., In re Villarie, 648 F.2d 810 (2d Cir. 1981).  Whereas a mortgagee, for example, would hold a claim because it has lent the debtor the mortgagee's own money, a retirement account entity does not have a claim because it loaned the debtor the debtor's own money.  In re Devine, 1998 WL 386380, at *9 (Bankr. E.D. Pa. July 7, 1998) (faulting an analogy made in In re Buchferer, 216 B.R. 332 (Bankr. E.D.N.Y. 1997), which disagrees with Villarie).  In the instant case, Mrs. Turner has simply borrowed money from herself, and not from ASRE.  Indeed, the ASRE plan description states, "When you take a loan from your account, the money you borrow comes out of your own account, so your balance is reduced by the amount of your loan.  If you default on your loan, the IRS considers any outstanding balance as a taxable distribution." (Pl.'s ex. 4 at 8.)  The Court joins the Villarie majority and agrees with Eisen v. Thompson that "[b]ecause overwhelming case law preceding the 2005 Act held that 401(k) loans were not 'debts' under the Code, and because Congress has not expressly said otherwise, the Court must presume that 'debt' retains its pre-2005 Act meaning."  Eisen v. Thompson, 2007 WL 1880290, at *6 (N.D. Ohio June 29, 2007).  Mrs. Turner's 401k loan repayments are not deductible on Line 42.

D.      Congressional Intent

Finally, the Debtors extensively argue that a Congressional interest in protecting retirement funds supports their position that, one way or another, 401k loan repayments are deductible under the means test in a Chapter 7 case.  The Debtors point to various Code provisions added by BAPCPA that explicitly concern retirement funds, such as section 362(19) (providing that it is not a violation of the automatic stay for an employer to withhold 401k loan repayments from a debtor's paycheck), section 522(b)(3)(C)

(allowing an exemption in certain retirement funds), section 522(d)(12) (same), section 541(b)(7) (excluding from property of the estate certain retirement contributions), and section 1322(f) (prohibiting a Chapter 13 plan from materially altering the terms of 401k loans and providing that loan repayments do not constitute "disposable income" in Chapter 13). Rather than convincing the Court that these amendments support the deductibility of 401k loan repayments in Chapter 7, the Debtors' argument has the opposite effect. In light of the amendments sprinkled throughout the Code—especially section 1322(f)—the lack of a 401k provision in section 707 is a glaring indication that Congress did not intend 401k loan repayments to be deducted in Chapter 7. The explanation for the lack of such a provision in section 707 is that Congress intended to steer many would-be Chapter 7 debtors toward Chapter 13, as discussed in <u>Lenton</u>:

> "First, 401(k) loan repayments are finite; a loan will eventually be paid off. Second, a Chapter 13 case is prospective, i.e., it encompasses a debtor's current and future financial circumstances for a period of three to five years. . . . Excluding 401(k) loans from the means test evidences a 'wait and see' approach that would channel debtors with such expenses into the longer period of bankruptcy supervision of Chapter 13 rather than the relatively short tenure of a Chapter 7 case, notwithstanding that doing so might result in a zero payment plan. However, because, as here, 401(k) loans might be paid off within the commitment period of a Chapter 13 case, the ability to increase the monthly plan payment would direct newly available funds to creditors. Such an approach serves both the Congressional intent to protect retirement contributions and 'ensure that debtors repay creditors the maximum they can afford,' a primary goal of BAPCPA. H.R. Rep. 109-31, pt. 1 at 1, *as reprinted in* 2005 U.S.C.C.A.N. 88, 89 (2005)."

<u>In re Whitaker</u>, 2007 WL 2156397, at *5 (omission in original) (quoting <u>In re Lenton</u>, 358 B.R. at 660).

     E.     <u>401k Loan Repayment as Special Circumstances</u>

In the event the presumption of abuse arises, the only way to rebut the presumption is to demonstrate special circumstances, and the Debtors' final argument is that the 401k loan repayment constitutes special circumstances. Section 707(b)(2)(B) provides:

(B)     (i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by der medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide—

(I) documentation for such expense or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

(iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims, or $6,000, whichever is greater; or

(II) $10,000.

11 U.S.C. § 707(b)(2)(B).  Although it is less than clear, Line 56 appears to be the place on Form B22A

where additional expenses arising from alleged special circumstances are supposed to be entered.  Line 56

is titled "Additional Expense Claims," and section 707(b)(2)(B)(i) uses the term "additional expenses."[2]

---

[2]  The instructions at Line 56 are somewhat confusing, as they reference "other expenses," the necessary expense test, and section 707(b)(2)(A)(ii)(I).  The instructions state, "List and describe any monthly expenses, not otherwise stated in this form, that are required for the health and welfare of you and your family and that you contend should be an additional deduction from your current monthly income under § 707(b)(2)(A)(ii)(I)."  Based on these references to "other necessary expenses" and section 5.15.1.10 of the Manual, the Court initially thought that Line 56 suggested that the necessary expense test should be used to potentially allow additional "other necessary expenses" that do not fit into one of the "categories specified" at section 5.15.1.10 of the Manual.  However, as discussed above, for purposes of the means test, the categories listed in the Manual are exclusive, which would render the listing of any expenses on Line 56 futile.  An attempt by the form to make the Manual's list non-exclusive would be ineffective since "the provisions of the statute govern over the Official Form."  In re Whitaker, 2007 WL 2156397, at *4.  Thus, despite the fact that the instructions for Line 56 reference section 707(b)(2)(A)(ii)(I)'s "other necessary expenses," the Court concludes that Line 56 is the proper place to list additional expenses arising from special circumstances.  The reasons for this are (1) that Line 56 and section 707(b)(2)(B)(i) both use the term "additional expense"; (2) section 707(b)(2)(B) requires that there be no reasonable alternative to incurring the additional expense and that the expense be necessary and reasonable, both of which are equivalents of the necessary expense test referenced at Line 56; and (3) Line 56 and section 707(b)(2)(B) both physically exist after the means test calculations and are separate from the means test calculations.  See In re Delunas, 2007 WL 737763, at *1 n.3 (Bankr. E.D. Mo.

- 8 -

As indicated by the statute's language, the universe of special circumstances is not limited to serious medical conditions and active duty, and some courts have cautioned against strictly comparing every argued special circumstance with these examples.  See, e.g., In re Littman, 2007 WL 1957175, at *7 (Bankr. D. Idaho July 6, 2007) ("Nor is there something necessarily inherent in these two examples that will always be present in a BAPCPA-acceptable 'special circumstance.'").  While the examples are helpful, the Court agrees with Littman that the main foci in assessing special circumstances are the "no reasonable alternative" clause and the requirements of section 707(b)(2)(B)(ii)–(iv).  Id.  The existence of special circumstances is dependent on the unique facts of each case, and the Court declines to adopt a rule that, for example, a special circumstance must be "beyond a debtor's reasonable control," see, e.g., In re Tuss, 360 B.R. 684, 701 (Bankr. D. Mont. 2007), or "truly unavoidable," In re Sparks, 360 B.R. 224, 230 (Bankr. E.D. Tex. 2006).  Expenses related to special circumstances, though, should be expenses that are not otherwise accounted for in the means test.  However, the Court stresses that the special circumstances provision is not a catch-all for any expense that does not fit into any other means test expense category.  See In re Lightsey, 2007 WL 2363025, at *3 (Bankr. S.D. Ga. July 26, 2007) (concluding that "every conceivable unfortunate or 'unfair' circumstance" is not a special circumstance).

The examples in the statute, though, do provide guidance with regard to what may constitute special circumstances, as the examples listed are not expenses themselves, but circumstances that give rise to expenses.  "[A]n obligation to repay a loan is not a 'special circumstance,' but the circumstances that led to taking that loan may be 'special' under § 707(b)(2)(B)(i)."  Eisen v. Thompson, 2007 WL 1880290, at *8 (citing In re Haman, 366 B.R. 307, 313 (Bankr. D. Del. 2007)).

In Eisen, the district court reversed the bankruptcy court's conclusion that the debtors' 401k loan obligation itself was a special circumstance.  The bankruptcy court abused its discretion by failing to find any special circumstances that caused the debtors to take out either of two loans.  The district court

March 6, 2007) (stating that "amounts listed at Line 56 are not included in the calculation of disposable income").

- 9 -

pointed out that 401k loans are common, and, based on the evidence, the debtors took out the loans for a decidedly non-special reason, "a general inability to keep up with their obligations to creditors." Id. In In re Martin, the debtor took out a 401k loan post-petition, causing the court to state that "close scrutiny should be given to loans of any type which are incurred post-petition and are then put forth as 'special circumstances.'" In re Martin, 2007 WL 2043720, at *9 (Bankr. C.D. Ill. July 16, 2007). The court did not find special circumstances mainly because the debtors did not present sufficient evidence documenting the use of the loan funds that would allow the court to evaluate whether there was a reasonable alternative. Id.

A case discussed above, In re Lenton, did find the debtor's 401k loan obligation to arise from special circumstances because the debtor was subject to automatic payroll deductions, that he took the loans out more than a year prior to the petition date, and that he used the loan proceeds to pay credit card debt, thereby reducing the amount of unsecured debt that would otherwise be paid through a Chapter 13 plan. In re Lenton, 358 B.R. at 662. Although the Court agrees with Lenton on many points, the Court does not reach Lenton's conclusion with regard to special circumstances. Lenton's analysis does not focus on the reason the loan was taken out, and the facts of the instant case are readily distinguishable. Mrs. Turner took out the first loan in October 2005 in the amount of $8,000. No evidence was presented explaining why the circumstances giving rise to the loan were "special," rather than general financial problems that precede almost every bankruptcy filing. Mrs. Turner took the second loan out post-petition in the amount of $10,000, which was used to repay the first loan and to repair the roof. Again, we do not know what the first loan was for, nor do we know the circumstances that caused her to take out a *post-petition* loan.

Having determined that the Debtors have not proven that the circumstances giving rise to the 401k loans were "special," the Court notes that, as discussed above, Mrs. Turner's 401k loan repayments are not a deductible expense under section 707(b)(2)(A), but such repayments are deductible in Chapter 13. There is a clear Congressional intent to channel many debtors toward Chapter 13.

- 10 -

II.      Vehicle Deductions

The issue before the Court arises from the Debtors' deductions claimed on Lines 23, 24, and 42. Lines 23 and 24 allow a debtor to deduct from his current monthly income standardized deductions for vehicle ownership/lease expenses for up to two cars.  The allowed amount is currently $471 for the first car and $332 for the second car.  If a debtor makes payments on the first car, Line 23 directs the debtor to subtract the amount of the monthly payment from the $471, and any remaining amount is allowed as a deduction on Line 23.[3]  If a second vehicle is claimed on Line 24, any monthly payments are similarly subtracted from the $332 to arrive at the deduction to be entered at Line 24.  On Line 42, debtors are allowed to deduct from their current monthly income monthly payments that they are contractually obligated to make on secured debts over the sixty months following the petition date.

The Debtors own four vehicles, two of which are owned free and clear and two of which they make payments on.  At the evidentiary hearing, the Debtors testified that the two liened vehicles are used by the Debtors and the two unencumbered vehicles are used by their sixteen and seventeen year old sons. The Debtors claim a deduction for each vehicle on Form B22A.  On Lines 23 and 24, they took the full deductions of $471 and $332 without subtracting any of the payments they make on two of their vehicles. The Debtors deducted the two car payments on Line 42.  Thus, the Debtors took a deduction for all four vehicles by listing on Lines 23 and 24 the two vehicles that they own outright and listing on Lines 42 the payments for the two encumbered vehicles.

The UST argues that the Manual limits the Debtors to deductions for two vehicles, and that the teenage sons' vehicles do not pass the necessary expense test.  See I.R.M. 5.15.1.7.  While the Court completely agrees with the UST that the Debtors are limited to two vehicles for which they may claim transportation ownership deductions on Lines 23 and 24, there appears to be no limit with respect to how many secured debts may be listed on Line 42.  In fact, if the space provided at Line 42 is not enough,

_____

        [3]  Debtors may take the entire deduction if they own the vehicle free and clear of liens.  In re Haley 354 B.R. 340 (Bankr. D.N.H. 2006).

- 11 -

Form B22A instructs, "If necessary, list additional entries on a separate page."  Neither does the statutory

section authorizing Line 42 provide any limit, stating in relevant part:

> (iii) The debtor's average monthly payments on account of secured debts shall be
> calculated as the sum of—
>
>> (I) the total of all amounts scheduled as contractually due to secured creditors in
>> each month of the 60 months following the date of the petition[.]

11 U.S.C. § 707(b)(2)(A)(iii).  There is also no language in section 707(b) or in Form B22A stating that

the vehicles listed on Line 42 must be the same vehicles listed on Lines 23 and 24.  Nor must the secured

debts listed on Line 42 satisfy the necessary expense test, as courts have tended to agree with Judge

Wedoff's conclusion that section 707(b)(2)(A)(iii)(I) "directs a deduction for all of the debt that will

become contractually due in the five years after the filing of the bankruptcy case, without regard to

whether the property securing the debt is necessary.  Thus, for purposes of the means test, debt secured

even by such items as luxury vehicles, pleasure boats, and vacation homes would be deductible."  Eugene

R. Wedoff, Means Testing in the New § 707(b), 79 Am. Bankr. L.J. 231, 274 (Spring 2005); In re Austin,

2007 WL 2264062, at *11 (Bankr. D. Vt. August 7, 2007) (adopting Judge Wedoff's interpretation); In re

Benedetti, 2007 WL 2083576, at *4 (Bankr. S.D. Fla. July 13, 2007).  Many courts—including this

one—have implicitly adopted Judge Wedoff's view by determining that a debtor may deduct payments on

secured debts under section 707(b)(2)(A)(iii) even if the debtor intends to abandon the collateral securing

the debt.  See, e.g., In re Hartwick, 359 B.R. 16, 20 (Bankr. D.N.H. 2007).  Needless to say, if a debtor

abandons property, the property is not necessary for the health and welfare of the debtor.

Lines 23 and 24 do not limit Line 42 either.  The only thread connecting these lines is an

instruction at Lines 23 and 24 instructing the debtor to subtract from the standard allowance "any debts

secured by Vehicle 1, as stated in Line 42."  There is nothing in the Code linking the transportation

ownership expenses at Lines 23 and 24 to the section 707(b)(2)(A)(iii) deduction on Line 42.  The UST

argues that not extending the Lines 23 and 24 two-car limit to Line 42 encourages double-dipping, i.e., a

debtor taking the same deduction twice.  The Court disagrees.  As the Court interprets the statute and

- 12 -

form, Debtors who own one or two cars are prevented from double-dipping on their vehicle(s).  However, if a debtor owns four cars and distributes the deductions as the instant Debtors have, there is no double-dipping, as each vehicle is only deducted once.  The Debtors' vehicle deductions are allowed.

III.    Business Mileage: Special Circumstances

The Debtors argue that the costs incurred from Mr. Turner's business mileage are either deductible "other necessary expenses" or special circumstances.  As for "other necessary expenses," the Debtors have not proven that the expenses related to the business mileage fit into any of the categories specified in the Manual, and the expenses are therefore disallowed as "other necessary expenses."

With regard to special circumstances, Mr. Turner's required business travel greatly exceeds that of the ordinary debtor.  Mr. Turner has no reasonable alternative to incurring the expense, as quitting or changing jobs is not reasonable.  On his federal income tax return for 2005, Mr. Turner deducted $9,175 on account of 21,266 business miles driven (not including commuting miles).  Mr. Turner testified at the evidentiary hearing that he did not use his 2006 driving logs when he computed his business mileage for Form B22A because as of the petition date he did not yet have the full year's logs.  However, Mr. Turner's credible and unrefuted testimony was that he drove about the same amount in 2006 as he did in 2005.

The UST argues that Mr. Turner's business mileage is included in his vehicle operation deduction on Line 22.  However, Mr. Turner's business mileage is separate from the normal operating costs deducted under the local standards on Line 22.  Mr. Turner testified that he meticulously logs his miles, being careful to keep commuting miles out of his business mileage.  Based on his logs, he took a deduction in 2005 of $9,175, which is $764.58 per month.  This deduction was only for business miles and not for regular use of his vehicle that is accounted for at Line 22.  As discussed above, a special circumstance should involve expenses that are not otherwise addressed in the means test, and Mr. Turner's business mileage is such an expense.  His circumstances are materially different from the average debtor.  Further, Mr. Turner has satisfied section 707(b)(2)(B)(ii) through (iii), as he has itemized

- 13 -

the mileage expense, provided his 2005 tax return as documentation of the mileage expense, provided a detailed explanation at the evidentiary hearing and in his pleadings of the necessariness and reasonableness of the expense, and attested under oath at the evidentiary hearing that he provided accurate information.  The Court thus concludes that the Debtors have established special circumstances, and the Debtors will be allowed a deduction in the amount of $764.58.

The Court disagrees with the UST that the Debtor only proved $406 as his monthly operating cost.  At the request of the UST, Mr. Turner created what came to be Exhibit 7, in which he estimated the amount of money that the Debtors had spent on each of the four family vehicles in the preceding six months.  While this document is credible, the 2005 tax return provides documentation for a full year rather than six months.  There are no credibility issues with regard to the tax return, and the Court concludes that it is the better evidence.

While the Court has determined that special circumstances exist, it remains to be seen whether the business mileage is sufficient to rebut the presumption of abuse.  Section 707(b)(2)(B)(iv) provides:

> (iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of—
>
> > (I) 25 percent of the debtor's nonpriority unsecured claims, or $6,000, whichever is greater; or
> >
> > (II) $10,000.

11 U.S.C. § 707(b)(2)(B).

IV.     Pest Control and Work Uniforms

The Debtors list on Line 56 a $27.67 monthly pest control expense and a twenty dollar monthly uniform and work clothing expense for Mrs. Turner.  As for the pest control, the Court agrees with the UST that such an expense is included within the local standard deduction on Line 21 for housing and utilities.  This is supported by the Manual, which states that the deduction takes into account necessary

maintenance and repair.  I.R.M 5.15.1.9.  The pest control expense is not so out of the ordinary as to be considered a justifiable expense arising from special circumstances.

As for Mrs. Turner's work uniforms, she credibly testified about her monthly expense for work shoes, shirts, and sweatshirts.  However, this expense is not taken out of her paycheck by her employer, and, therefore, is not a mandatory payroll deduction.  Further, a minimal monthly expense for work clothing is implicitly included in the Line 19 standard deduction, which includes clothing.  A minimal amount spent on work clothing is not a special circumstance, as almost every debtor's actual clothing expenses include clothes that the debtor wears to work.

## CONCLUSION

In light of the above determinations, it is time to revisit Form B22A to determine whether the presumption of abuse applies.  On Line 12, the Debtors' current monthly income is listed at $9,506.39, and this figure has not been amended or challenged.  Disallowing the 401k loan repayment that the Debtors list at Line 26, the new total deductions allowed under IRS standards at Line 33 is $5,651.94.  The Line 41 deduction remains $291.57, and the Debtor is allowed the full amount listed at Line 42, $2,876.73, for payments on secured claims.  The sum of Lines 33, 41, and 42 is $8,820.24, which is then subtracted from the current monthly income of $9,506.39, resulting in a projected Chapter 13 plan payment of $686.15 to be entered at Line 45a and an average monthly administrative expense of $68.62 to be entered at Line 45.  This changes the amount at Line 46 to $2,945.35.  The total of all deductions to be entered at Line 47 is $8,888.86.  However, the special circumstance expense of $764.58 must be added to this, yielding a total deduction of $9,653.44.  This amount exceeds the Debtors' current monthly income, and the presumption of abuse has been rebutted.  The UST has not argued that the case should be dismissed pursuant to section 707(b)(3)'s totality of the circumstances test, and the Court does not detect abuse in this case.  As such, the UST's motion to dismiss is denied.

- 15 -

This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

DATED this 6th day of September, 2007, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Judge